# In the United States Court of Federal Claims

|  |  |
|---|---|
| **ACTIVE DEPLOYMENT SYSTEMS, LLC,**<br><br>*Plaintiff,*<br><br>v.<br><br>**THE UNITED STATES,**<br><br>*Defendant.* | No. 25-968<br>(Originally Filed: October 7, 2025)<br>(Reissued: October 30, 2025) |

*Matthew P. Moriarty*, *Ian P. Patterson*, *Timothy J. Laughlin*, and *Haley M. Sirokman*, Schoonover & Moriarty LLC, Olathe, Kansas, for Plaintiff.

*Elizabeth M.D. Pullin*, Trial Attorney, *Douglas K. Mickle*, Acting Deputy Director, *Patricia M. McCarthy*, Director, Commercial Litigation Branch, *Brett A. Shumate*, Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C., for Defendant. *Patrick J. Madigan* and *Joshua K. Adams*, Associate Legal Advisors, Commercial and Administrative Law Division Office of the Principal Legal Advisor, United States Immigration and Customs Enforcement, Washington, D.C., of counsel.

## OPINION AND ORDER

**HADJI,** *Judge*.

This is a procurement protest involving the Department of Homeland Security (DHS), Immigration and Customs Enforcement's (ICE) award of 42 indefinite delivery / indefinite quantity (IDIQ) contracts for detention related services.[1] Plaintiff, Active Deployment Systems (ADS), alleges: (1) the Government's decision to award 42 contracts was improper because the solicitation stated the Government's intention was to award "five (5) or more" contracts; and (2) the solicitation's pricing structure and evaluation were arbitrary, making the awarded contracts unworkable. In its prayer for relief, *inter alia*, ADS requests a temporary restraining order preventing ICE from awarding task orders. ECF 25 at 18. Before the Court are Plaintiff's Motion for Judgment on the Administrative Record (ECF 40), as well as the Government's Motion to Dismiss pursuant to Rule 12(b)(6) (ECF 18) and Cross-Motion for Judgment on the Administrative Record (ECF 45).

---

[1] This Opinion was issued under seal on October 7, 2025. The parties were directed to propose redactions within 14 days of issuance of the Opinion. No proposed redactions were received. The Court hereby publicly releases the Opinion in full.

## BACKGROUND

In April 2025, ICE issued Solicitation number 70CDCR25R00000005 (the Solicitation), as an emergency acquisition aligned to Executive Orders that directed DHS to "take all appropriate actions to detain, to the fullest extent permitted by law, aliens apprehended for violations of immigration law until their removal from the United States."[2] AR 371, 375. To fulfill these Executive Orders, the Solicitation sought extensive detention services including physical detention facilities/plants, medical services for detainees, resources and activities for detainees, legal resources, recordkeeping services, and support staff. AR 372-74. The Solicitation was structured as an IDIQ procurement, where awardees could compete for specific task order awards during the ordering period. AR 375, 382. The Solicitation anticipated making an award "to five (5) or more qualifying offerors" on a best value tradeoff basis pursuant to Federal Acquisition Regulation (FAR) 15.101-1. AR 1727. There were two evaluation factors outlined in the Solicitation—Factor 1: Corporate Experience and Factor 2: Price. AR 1727. Corporate Experience was significantly more important than Price. *Id*.

The Solicitation outlined eight objectives "necessary to deliver comprehensive and effective detention operations to support the federal government's immigration enforcement activities," of which offerors could "elect to support some, or all." AR 439. These objectives included: Objective I: provide a detention facility/plant; Objective II: provide safe and secure detention operations; Objective III: provide safe and secure ground transportation services; Objective IV: provide adequate medical care to detained aliens; Objective V: provide resources and activities to manage detained aliens; Objective VI: provide access to required legal resources; Objective VII: effectively administer and manage detainee records; and Objective VIII: provide contract detention processing support for ERO officers. AR 438-39. Offerors were informed that they "need not have the capability to provide each and every service detailed under the objectives…. The government encourages vendors to propose against any part of [the Solicitation] but must clearly elect which objective(s) (I-VIII) and which services it is proposing in its submissions." AR 428. To make this election, the Solicitation included a "Table of Elected Objectives" upon which offerors could indicate their selected objectives. AR 1560.

On the next page, the Solicitation included a chart titled "Contract Line Item (CLIN) and Objective Alignments," which aligned the contract objectives to CLINs; offerors were to complete the chart based on their pricing proposals. AR 1561, 1720. Based on the structure of the Solicitation, some CLINs supported multiple objectives at once. *See* AR 1561-66.

In addition, offerors were directed to fill out the chart in Attachment 15 (the Pricing Schedule), to align with their proposal. AR 1721; *See* AR 1810. Offerors were also instructed to submit a pricing narrative with their proposal to include the basis of proposed

---

[2] The Solicitation was amended four times on April 3, 2025, then on April 4, 2025, then again on April 7, 2025, and finally on May 5, 2025. AR 1364, 1435, 1556, 1661.

pricing and other relevant information. AR 1722. The Pricing Schedule included pre-filled "fair and reasonable" prices as determined by ICE. AR 1798-99. Relevant here, bed rates were capped on a "Per Detainee/Per Day" basis, a rate which if exceeded, would result in unreasonable pricing and the offeror's proposal being rendered ineligible for award. AR 1722. These price ceilings were based on a market research report and an independent government cost estimate (IGCE). *See* AR 340-43, 348-49. Price ceilings for bed day rates were calculated in the IGCE based on pricing estimates for a procurement of 10,200 beds and 15,000 beds. AR 340-43. The Pricing Schedule included 10 CLINs for bed rates prompting offerors to propose rates for different capacities of detainees ranging from 100 to 1,001 or more persons. AR 1810.

On April 7, 2025, the Solicitation closed, and ICE received 54 proposals.[3] AR 1366, 5202. From that pool of offerors, the Government eliminated 11 offerors during compliance review. AR 5204. One other offeror was eliminated due to a low confidence rating in Factor 1: Corporate Experience. AR 5207. The remaining 42 offerors received Some or High Confidence for Factor 1 and were selected for award. AR 5207-08. ADS bid on, and was awarded, Objectives I, II, V, VI, and VII. AR 5214.

On June 9, 2025, Plaintiff filed the instant procurement protest action. ECF 1. The Government moved to dismiss. ECF 18. Thereafter, Plaintiff filed a Motion for Judgment on the Administrative Record (ECF 40). In response, the Government filed a Cross-Motion for Judgment on the Administrative Record (ECF 45).

## LEGAL STANDARDS

### I.   Procurement Protest Jurisdiction and the Standard of Review

Plaintiff alleges jurisdiction under the Tucker Act. ECF 1 ¶ 4. The Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996, 28 U.S.C. § 1491(b), confers jurisdiction on this Court to render judgment on "an action by an interested party objecting to … the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1).

The Court reviews a procurement protest action under the standards set forth in Section 706 of the Administrative Procedure Act (APA), 5 U.S.C. § 706. 28 U.S.C. § 1491(b)(4). *See NVT Techs., Inc. v. United States,* 370 F.3d 1153, 1159 (Fed. Cir. 2004) (stating that APA standard of review is applicable in bid protest context). The APA provides that an agency's decision is to be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Nat'l Gov't Servs., Inc. v. United States*, 923 F.3d 977, 981 (Fed. Cir. 2019). "The arbitrary and capricious standard applicable here is highly deferential," and "requires a reviewing court

---

[3] Shortly before the Solicitation closed, ADS submitted an agency-level protest, alleging that the terms of the Solicitation were ambiguous and unreasonable. AR 8836-8842. Subsequently, ADS also filed an agency-level protest challenging the reasonableness of the price ceilings included in the Solicitation. AR 8883-86. Both protests were denied. AR 8953-55.

to sustain an agency action evincing rational reasoning and consideration of relevant factors." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000) (citing *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974)). In reviewing procurement decisions, the Court should not substitute its judgment for the agency's. *See R & W Flammann GmbH v. United States*, 339 F.3d 1320, 1322 (Fed. Cir. 2003).

## II.   Judgment on the Administrative Record in a Procurement Protest

Court of Federal Claims Rule 52.1(c) provides for judgment on the administrative record. Rule 52.1(c) was "designed to provide for trial on a paper record, allowing fact-finding by the trial court." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005).

To prevail on a procurement protest, a plaintiff must demonstrate: "(1) that the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (citation omitted). "When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations." *Id.* at 1333 (internal quotation marks omitted). If a protester meets its burden to prove that an agency's conduct lacked a rational basis or was contrary to law, the Court determines, "as a factual matter, if the bid protester was prejudiced by that conduct." *Bannum*, 404 F.3d at 1351. For a post-award protest, a protester must establish that it was "significantly prejudiced" by the error. *Id.* at 1353; *see also* 5 U.S.C. § 706 ("[D]ue account shall be taken of the rule of prejudicial error."). "To establish 'significant prejudice,' [the protester] must show that there was a 'substantial chance' it would have received the contract award but for the errors …." *Bannum*, 404 F.3d at 1353. Although the "substantial chance" test is sometimes applied in pre-award bid protests, *see, e.g., Orion Tech., Inc. v. United States*, 704 F.3d 1344, 1348-49 (Fed. Cir. 2013), courts have also used a more lenient test "[i]n some pre-award cases … [where] there is an inadequate factual foundation for performing a 'substantial chance' test," *Oracle America, Inc. v. United States*, 975 F.3d 1279, 1291 n.3 (Fed. Cir. 2020); *see also Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1363 (Fed. Cir. 2009). In such cases, the protester must show it suffered "a non-trivial competitive injury which can be addressed by judicial relief."[4] *Weeks Marine*, 575 F.3d at 1363 (internal quotation marks omitted).

---

[4] While this protest was filed post-award, ADS argues that because it challenges the terms of the Solicitation, the more lenient "non-trivial competitive injury" test should apply. *See, e.g.*, ECF 27, 9-10. Because Plaintiff fails to satisfy even the more lenient test, as addressed below, the Court need not reach the issue of which test applies.

## DISCUSSION

ADS's protest raises two principal complaints.[5] First, it argues that the Government's decision to award 42 contracts was improper because the Solicitation stated the Government's intention was to award to "five (5) or more" offerors. Second, ADS contends the Solicitation's pricing structure and evaluation was arbitrary and confusing, making the entire awarded contract unworkable.

### I.  Awarding 42 Contracts Was Explicitly Permitted by the Solicitation

ADS alleges that ICE's decision to award contracts to 42 contractors was in excess of the "five (5) or more" offerors the Solicitation stated would receive contract awards, making the award decision unlawful and prejudicial because ADS now has to compete for task orders with more companies than the Solicitation contemplated. ECF 40-1 at 24-28.

"Interpretation of a government solicitation, as with a contract, begins with the solicitation's plain language." *CliniComp Int'l, Inc. v. United States*, 117 Fed. Cl. 722, 736 (2014) (citing *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1353 (Fed. Cir. 2004)).

The Solicitation stated that ICE planned to award contracts "to five (5) or more qualifying offerors whose proposals represent the best overall value to the government." AR 1727. "If the provisions of the solicitation are clean and unambiguous, they must be given their plain and ordinary meaning …." *Banknote*, 365 F.3d. at 1353. Looking to the plain language of the Solicitation, the language "five (5) or more" can only mean one thing—five or more than five. It does not mean "approximately five" as ADS contends. In the context of the number of contracts the Government was permitted to award based on the Solicitation, the plain meaning of "five (5) or more" is that the Government could award five contracts or any number above five. By awarding 42 contracts when the Solicitation stated it could award 5 or more, the Government complied with the unambiguous, plain language of the Solicitation.

### II.  The Pricing Structure of the Solicitation Was Not Prejudicial

The crux of ADS's pricing allegations is: (1) the Solicitation had an arbitrary CLIN structure and (2) the pricing caps were irrational because they were based on a flawed IGCE. ECF 40-1 at 11. Regarding the structure of CLINs, ADS alleges that because CLINs were structured to encompass several objectives, offerors were compelled to bid on CLINs

---

[5] The Government moves for dismissal on the basis that ADS is not an interested party and thus lacks statutory standing. ECF 18 at 9-13. Whether an individual or entity qualifies as an "interested party" is narrowly construed. *See Percipient.AI, Inc. v. United States*, ___ F.4th ___, 2025 WL 2472671, *13 (Fed. Cir. Aug. 28, 2025). However, the Court need not address ADS's standing, because ADS loses on the merits. *See CACI, Inc.-Fed. v. United States*, 67 F. 4th 1145, 1152 (Fed. Cir. 2023) ("We see nothing in *Lexmark* that suggests … the Claims Court may not initially determine whether a plaintiff is an 'interested party,' though such an initial determination is not required before addressing the merits, because statutory standing is not jurisdictional.").

they did not seek to, despite the Solicitation's claim that offerors "need not have the capability to provide each and every service detailed under the objectives." ECF 40-1 at 10-11; AR 428. ADS claims that this ambiguity meant that offerors were not bidding on an equal basis and could not know the proper way to structure their pricing for the bed rate CLINs. ECF 40-1 at 7, 13, 15. Regarding the price caps, ADS argues that they were arbitrary because they were grounded in a "fundamentally flawed" IGCE and market research process. ECF 40-1 at 16.

The Court begins its analysis of ADS's pricing allegations with prejudice because analyzing the rationality of the CLIN structure and pricing caps is more laborious and ultimately not necessary if Plaintiff cannot establish prejudice. To prevail in this protest, ADS must demonstrate prejudice. *Impressa*, 238 F.3d at 1333. Even under the more lenient "non-trivial competitive injury" standard for prejudice that Plaintiff alleges should be applied, ADS still has not sufficiently carried its burden to establish prejudice. ECF 40-1 at 6; *Sys. Stud. & Simulation, Inc. v. United States*, 22 F.4th 994, 997-98 (Fed. Cir. 2021). Under this test, the protester must show it suffered "a non-trivial competitive injury which can be addressed by judicial relief." *Weeks Marine*, 575 F.3d at 1363 (internal quotation marks omitted). Here, ADS has made no such showing.

First, even assuming that the pricing structure of the Solicitation was flawed, ADS fails to establish prejudice because it was awarded the contract upon which it submitted a proposal. *See* AR 5214, 5441-44. In fact, ADS was awarded a contract for all objectives it proposed against. AR 5214, 5441-44. While ADS alleges that it was prejudiced because all offerors were not competing on equal footing, ADS fails to articulate how it was harmed based on this premise. ECF 48 at 11-12. Because ADS was awarded all objectives which it proposed, it cannot prove an injury, let alone a non-trivial injury, that this Court can redress. *Weeks Marine*, 575 F.3 at 1363. ADS, therefore, fails to prove prejudice, as is necessary to succeed on this claim. *Id.*

Likewise, ADS cannot demonstrate prejudice stemming from the allegedly arbitrary price ceilings. ADS alleges that had it "not been subjected to these arbitrary caps, it could have submitted pricing as it sees fit … [which] could have certainly been more than the set 'Fair and Reasonable' price." ECF 48 at 15. More specifically, ADS contends that because price ceiling calculations were predicated on procurements smaller than those anticipated by the Solicitation and because ICE determined the "fair and reasonable" price before it received any proposals, the price caps are arbitrarily low and thus prejudicial. ECF 40-1 at 16. ADS's argument is purely speculative. In the context of the IDIQ contract at issue here, ADS's alleged harm requires, at a minimum, that (1) the Government will place future task orders; (2) the future task orders will be in large quantities; and (3) the large quantity of work will not benefit from economies of scale, but instead be more expensive for ADS to fulfill on a per unit basis. Because this sequence of events is far from certain to occur, it is speculative, and therefore not an adequate basis to establish prejudice. *See Reema Consulting Servs., Inc. v. United States*, 107 Fed. Cl. 519, 529 (2012) ("[F]or plaintiff to have an 'injury which can be addressed by judicial relief,' that injury must be 'actual or

impending,' and not one that 'has not occurred yet, is far from imminent, and indeed, may never occur.'") (quoting *Weeks Marine*, 575 F.3d at 1362).

Similarly, because this is an IDIQ contract, to the extent that some of the Government's requests for task order proposals prove to be money losers as Plaintiff fears, Plaintiff is under no obligation to submit a proposal on that work. In other words, at a later date, Plaintiff remains free to pick and choose which work it would like to be selected to perform and can avoid contracting for work that it cannot perform at a profit. The very nature of the contract effectively provides Plaintiff with an "out" from being trapped in an unprofitable situation on account of the Government's alleged arbitrary pricing caps. Accordingly, the Court cannot see how such a structure prejudices Plaintiff.

Lastly, and more generally, the Court has trouble finding prejudice related to the pricing in the contract because, despite the alleged prejudice, Plaintiff unequivocally expressed its willingness and desire to perform the contract. During oral argument, the Court asked whether the appropriate remedy for the allegedly arbitrary pricing structure of the contract would be for the Court to award Plaintiff its proposal costs and allow it to walk away from the contract it voluntarily executed. *See* Oral Argument at 22:55. Plaintiff stated that it did not seek to back out of the contract due to the alleged pricing flaws, but instead expressed its desire to perform the work. *See* Oral Argument at 24:54. As such, Plaintiff simultaneously maintains that the contract's pricing is so arbitrary that it is unworkable, yet not so arbitrary that Plaintiff is willing to forego the contract. Accordingly, the Court does not find prejudice when Plaintiff's own actions—signing the contract and expressing continued desire to perform—indicate a willingness to perform under the terms of the contract it alleges are unworkable.

## CONCLUSION

For the foregoing reasons, the Government's Cross-Motion for Judgment on the Administrative Record (ECF 45) is **GRANTED** and Plaintiff's Motion for Judgment on the Administrative Record (ECF 40) is **DENIED**. Further, Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (ECF 3) and the Government's Motion to Dismiss (ECF 18) are **DENIED** as **MOOT**. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

PHILIP S. HADJI
Judge